UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE DEANGELO DARDEN,   )<br>                                                         )<br>            Plaintiff,                           )<br>                                                         )<br>     v.                                              )      Case No. 4:25-cv-00014-NCC<br>                                                         )<br>LISA HOOKER, et al.,                     )<br>                                                         )<br>            Defendants.                      ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Dominique Deangelo Darden brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights. The matter is now before the Court upon the motions of Plaintiff for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF Nos. 5 & 9.[1] Having reviewed the motions and the financial information submitted in support, the Court will grant the second motion and assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his Amended Complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for frivolity and failure to state a claim upon which relief may be granted. *See* U.S.C. § 1915(e)(2)(B).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial

---

[1] Plaintiff filed two motions to proceed *in forma pauperis* – one handwritten motion which does not provide the required financial information (ECF No. 5) and one motion on a Court-provided form (ECF No. 9). Both motions seek the same relief. The Court will consider the second, Court-form motion which has complete information, and deny the first motion.

partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a prisoner at Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. ECF No. 8 at 2. In support of his requests to proceed without prepaying fees and costs, Plaintiff submitted a printout of his inmate account statement showing approximately six (6) weeks of account activity. ECF No. 6. Although Plaintiff's motion states that he has no income, *see* ECF No. 9 at 1, the account statement shows that he has a prison job that pays between $7.50 and $8.50 a month. ECF No. 6 at 1 (showing deposit of $7.50 for December 2024 payroll and $8.50 for January 2025 payroll). The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If Plaintiff is unable to pay this initial partial filing fee, he must submit a certified copy of his prison account statement in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a

complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). While federal courts should not dismiss an action commenced *in forma pauperis* if the facts alleged are merely unlikely, the court can properly dismiss such an action as factually frivolous if the facts alleged are found to be "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke,* 490 U.S. at 327). Allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *Id.* (quoting *Neitzke*, 490 U.S. at 325,

327, 328). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33.

## Plaintiff's Background

Plaintiff's pleadings in this matter allege a wide variety of unrelated claims. However, a claim Plaintiff makes throughout his filings is that he is being detained in the custody of the Missouri Department of Corrections (MDOC) past his release date. ECF No. 8 at 4. Plaintiff has an extensive criminal history—dating back to 2007 and involving both state and federal court. An understanding of some of this history provides insight into Plaintiff's confusion about his expected release date and calculation of his time served.

The Court will not detail all of Plaintiff's past charges and sentences but will discuss those relevant to the allegations of the instant Complaint. Based on an independent review of Plaintiff's state court proceedings on Missouri Case.net, the State of Missouri's online docketing system, it appears that Plaintiff faced separate firearm charges in both St. Louis City and St. Louis County in 2020 and 2021. On September 5, 2020, Plaintiff was charged in the Circuit Court of the City of St. Louis with unlawful possession of a firearm. *State v. Darden*, No. 2022-CR01542 (22nd Jud. Cir., filed Sept. 5, 2020). Over the subsequent few years, there were multiple attempts to get Plaintiff to wear a GPS monitor while on bond, and multiple instances of Plaintiff failing to appear for hearings. Eventually, in early 2022, after Plaintiff was arrested in Washington state, the Missouri state court issued a governor's warrant and Plaintiff was returned to Missouri. However, a state court judge ordered an evaluation of Plaintiff's mental capacity and in April 2023, based on a psychiatric evaluation, the state court found that Plaintiff lacked the mental fitness to proceed in his criminal matter and suspended his case. Plaintiff was committed to the custody of the Department of Mental Health (DMH) for care and treatment until June 2024 when the state court

ordered for his criminal case resume.  On August 19, 2024, Plaintiff pleaded guilty and was sentenced to two years.  However, he was given credit for 845 days of time served so his sentence was deemed satisfied.

Nevertheless, at the time of the issuance of that sentence, Plaintiff had multiple other charges pending against him.  For example, on November 18, 2021, Plaintiff was arrested on a charge of unlawful possession of a firearm, issued from the Circuit Court of St. Louis County. *State v. Darden*, No. 21SL-CR05238 (21st Jud. Cir., filed Nov. 18, 2021).  After being held for just a few days (from November 18 to December 3, 2021) on this charge, Plaintiff was released.  But when Plaintiff failed to appear for an April 2022 hearing, a warrant was issued for his arrest on May 16, 2022.  That warrant was served on Plaintiff over two years later, on August 26, 2024, after he was sentenced on time served in the St. Louis City firearm case.  A few days later, on August 30, 2024, Plaintiff pleaded guilty to this charge and was sentenced to two years with MDOC.  A handwritten notation on the Judgment that issued in the case ordering that sentence states: "the defendant shall receive credit for time served.  By defense calculations, defendant has served 1,015 days."  ECF No. 8-1 at 13.

It appears that Plaintiff was not immediately taken into DOC custody after that August 30th sentencing because he had other pending criminal charges.  On November 7, 2024, Plaintiff pleaded guilty in three separate criminal cases.  *See State v. Darden*, No. 22SL-CR04077-01 (22nd Jud. Cir., filed May 17, 2022) (two counts felony stealing); *State v. Darden*, No. 21SL-CR01132-01 (21st Jud. Cir., filed Mar. 8, 2021) (possession of controlled substance); *State v. Darden*, No. 22SL-CR03581-01 (22nd Jud. Cir., filed May 5, 2022) (third-degree assault).  On all these charges, Plaintiff received sixty (60) day sentences, to run concurrently, with credit for sixty (60) days of time served.  Since these sentences were completed, it appears that Plaintiff was then transferred

to DOC custody to serve the two (2) year sentence on the St. Louis County firearm charge. This is where the allegations of his Complaint appear to begin.

## Plaintiff's Pleadings

### I.   Case-Initiating Pleading

Plaintiff initiated this action with a handwritten pleading titled "42: 1983 Bivens Civil Suit" in January 2025. ECF No. 1. In this pleading, Plaintiff alleges that he is a "hostage" of the MDOC because he is being held past his release date. *Id.* at 1. Plaintiff requests money damages and immediate release from confinement. *Id.* at 3. On March 6, 2025, the Court directed Plaintiff to amend his complaint on a Court-provided form, in compliance with the Local Rules of the Court. ECF No. 4. In response to this Order, Plaintiff filed a letter to the Court with attached exhibits (ECF No. 7) on March 10, 2025, and an Amended Complaint on a Court form (ECF No. 8) on March 20, 2025.

### II.   Amended Complaint

Plaintiff names eight (8) ERDCC employees as defendants in his Amended § 1983 Complaint, in their official capacities only: (1) Lisa Hooker; (2) Justin Miller; (3) Mike Boyd; (4) John Ervin; (5) Brittni Shinkle; (6) Ashley Downs; (7) Tim Freeman; and (8) Richard Adams. ECF No. 8 at 1-3. These defendants are all case workers, correctional officers, or administrators at ERDCC. *Id.* at 2-3, 6-7. None of these defendants are alleged to be ERDCC medical professionals or kitchen workers.

Plaintiff's Amended Complaint raises a variety of unrelated legal claims. First, Plaintiff reiterates his initial claim that he is being unlawfully detained past his release date. *Id.* at 4. He asserts that upon intake at ERDCC on November 15, 2024, he was told that he would be released the next day. He alleges that his continued unlawful detention violates his due process and is due to defendants' neglect and obstruction. Plaintiff admits that he was sentenced to two (2) years

with MDOC in case no. 21SL-CR05238-01 (the St. Louis County firearm case), but he argues that he has already been confined for 1,015 days, so he should be released on time served.

Next, Plaintiff goes on to make numerous claims against parties who are not named as defendants in this matter. He claims an officer Laramore entered false information and provided fraudulent documentation on his criminal sentence. *Id.* He asserts a "medical malpractice" claim, arguing that he received negligent medical care at ERDCC for bullet fragments in his left leg. *Id.* at 4-5. He mentions an Eighth Amendment claim based on being on suicide watch for "4 weeks w/o clothing," alleging that these conditions of confinement resulted from Plaintiff filing a Prison Rape Elimination Act (PREA) complaint. *Id.* at 5. For relief, Plaintiff seeks over ten million dollars in damages for himself, damages for his daughter and mother, and his immediate release from confinement. ECF No. 8 at 5.

Plaintiff attached handwritten supplements to his Amended Complaint that contain additional allegations. ECF No. 8-1 at 5-6. Plaintiff claims ERDCC kitchen workers are poisoning him daily "with bodily fluid and unknown foreign substances." *Id.* at 5. He further alleges that he was sexually abused by another inmate and sexually violated by ERDCC correctional officers that are not named as defendants in this case. *Id.* at 6. Apparently, these non-defendant officers were responsible for Plaintiff's four (4) weeks of naked suicide watch. Furthermore, Plaintiff claims that some non-defendant mental health providers at ERDCC are intimidating him to take "psych meds" and fraudulently classifying him under "psych status." *Id.* Finally, in a letter to the Court, Plaintiff also asserts that the Missouri parole office is embezzling and laundering money in a "corrupt, fraudulent, and illegal scheme," involving debits from Plaintiff's prison account. ECF No. 7 at 2.

### III. Exhibits

Plaintiff filed numerous exhibits in support of his claims—some relevant and some irrelevant.[2]  It appears that sometime in late 2024, Plaintiff sent letters to both the St. Louis County Circuit Court and the Missouri Probation and Parole office, requesting a calculation of his jail time credit.  ECF Nos. 1 at 4 & 1-1.  Saint Louis County completed a Jail Time Endorsement on November 13, 2024, stating that as of that date, Plaintiff had credit for 97 days of time served on his sentence from the St. Louis County firearm case.  ECF No. 8-1 at 2.  In addition, Plaintiff attached multiple copies of his MDOC Face Sheet, indicating that his mandatory release date is "12/06/2025" and his time credit release date is "08/06/2025."[3]  *Id.* at 7 & 16; *see also* ECF No. 7-1 at 1.

Plaintiff also filed numerous documents concerning his administrative segregation placement.  ECF No. 8-1 at 3-4; ECF No. 7-1 at 7-10.  According to these documents, Plaintiff was placed in administrative segregation on November 23, 2024, after Plaintiff requested protective custody from another offender.  ECF No. 7-1 at 7; ECF No. 8-1 at 3.  Four days later, Plaintiff had a hearing with the Protective Custody Review Hearing, which included defendants Hooker, Miller, and Ervin.  After Plaintiff began cursing at Miller during the hearing, he had to be removed.  As such, his administrative segregation placement was continued, as enemy waivers could not be signed.  *Id.*  At the next review hearing on December 23, 2024, with the same three defendants, it was recommended that Plaintiff be returned to general population.  However, before

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[3] Plaintiff repeatedly alleges a non-defendant provided fraudulent information about his sentence.  This allegation seems to relate to a mistake on Plaintiff's Face Sheet regarding the "commit/percentage."  *See* ECF No. 8 at 4.  The Court notes that on February 20, 2025, the "commit/percentage" was removed from Plaintiff's Face Sheet, but there was no resulting impact on his release dates.  *See* ECF No. 7-1 at 4; ECF No. 8-1 at 16-20.

bedspace could be found for him, Plaintiff again requested protective custody. ECF No. 8-1 at 3; ECF No. 7-1 at 8. Because Plaintiff was on suicide watch, his next review hearing was not until January 29, 2025—many weeks after Plaintiff initiated this lawsuit. ECF No. 8-1 at 3; ECF No. 7-1 at 9. At that hearing, with defendants Hooker, Miller, Ervin, and Downs, Plaintiff's administrative segregation placement was continued due to a need to further evaluate his protective custody needs and Plaintiff "not remaining double cell compliant." ECF No. 8-1 at 3. Plaintiff segregation was again continued after a February 2025 hearing that Plaintiff refused to participate in. ECF No. 7-1 at 10.

## Discussion

Plaintiff's pleadings assert numerous, unrelated legal claims against both named and unnamed defendants. After careful review and liberal construction of the pleadings, the Court finds that this case is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). To the extent that Plaintiff initiated this action to seek immediate release from confinement based on time served, such relief is not cognizable in an action brought under § 1983. Furthermore, Plaintiff § 1983 claims for money damages are all brought against defendants in their official capacities and therefore, are barred by the Eleventh Amendment. Even if the Court liberally construed Plaintiff's claims as being brought against defendants in their individual capacities as well, this case would still be subject to dismissal as frivolous and/or for fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

**I.   Immediate Release Relief**

To the extent Plaintiff brings this action seeking immediate release from confinement, such relief is not available under § 1983.[4] "[W]hen a state prisoner is challenging the very fact

---

[4] The Court understands how Plaintiff could be confused about his correct release date, as his criminal history is complex and confusing. Furthermore, the Court acknowledges that when Plaintiff was sentenced to two years in the St. Louis County firearm case on August 30, 2024 (no. 21SL-CR05238-01), the Judgment in that case states that

duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (explaining that Supreme Court "has held that a prisoner in state custody cannot use a [42 U.S.C.] § 1983 action to challenge the fact or duration of his confinement"); *Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release); *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) (stating that when "a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action").

However, Plaintiff is warned that a federal court does not have jurisdiction to issue a writ of habeas corpus to a person in state custody unless the inmate "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Before filing another action on this claim, Plaintiff must consider which court—state or federal—is the correct venue for his claim. *See Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991) (finding petitioner's claim for jail time credit under a state statute was "a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction").

## II. Official Capacity Claims for Money Damages

To the extent Plaintiff brings § 1983 claims seeking money damages, all of Plaintiff's Amended Complaint claims are brought against the defendants in their official capacities only. Naming a government official in his or her official capacity is the equivalent of naming the

---

Plaintiff should receive credit for time served and Plaintiff's attorney calculated that amount as "1,015 days." ECF No. 8-1 at 13. However, it appears that other authorities have calculated a different amount for Plaintiff's time served. *See* id. at 2. As explained above, to the extent Plaintiff requests a review of this amount and immediate release from confinement, such relief is not available in this § 1983 action.

- 10 -

government entity that employs the official. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). As such, Plaintiff's official capacity claims against ERDCC defendants are actually claims against their employer, MDOC – an agency of the State of Missouri.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). In the absence of a waiver, the Eleventh Amendment[5] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, Plaintiff's claims for money damages, brought against defendants in their official-capacity, are barred by the Eleventh Amendment and must be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."); *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

## III.     Dismissal of Claims against Non-Parties

Plaintiff's pleadings assert a wide variety of claims against parties not named in this action. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of

---

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Because many of Plaintiff's claims are made against persons not named as defendants in this action, and the parties who are named as defendants are not alleged to have been personally involved or directly responsible, these claims are subject to dismissal for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). This includes Plaintiff's claims concerning submission of fraudulent information on his Face Sheet; inadequate medical care for bullet fragments in his leg; Eighth Amendment allegations of cruel and unusual punishment and/or retaliatory discipline for the filing of a PREA complaint; food poisoning by ERDCC kitchen workers; intimidation and threats regarding his need to take mental health medications; and money laundering and embezzlement of his prison funds.

In addition, many of these claims by Plaintiff are also subject to dismissal as frivolous because they are "clearly baseless"—including Plaintiff's allegations that his food is being poisoned daily and that the parole office is laundering and embezzling his money. *See Denton*, 504 U.S. at 32-33; 28 U.S.C. § 1915(e)(2)(B)(i).

**IV.     Unlawful Detention Claim**

Even if the Court were to construe the Amended Complaint as also bringing individual capacity claims, these claims would be subject to dismissal for failure to state a claim. Plaintiff alleges defendants Lisa Hooker, Justin Miller, Mike Boyd, John Ervin, Brittni Shinkle, and Ashley Downs are responsible for holding him "hostage" past his prison release date, due to their "neglect and obstruction."[6] ECF No. 8 at 4. Plaintiff does not explain what actions these defendants took

---

[6] Later in a supplement to the Amended Complaint, Plaintiff also alleges that defendants Ervin, Hooker, Miller, Boyd, and Shinkle were responsible for "holding [him] hostage in ad-seg under a 'psych status'" and that these defendants (along with many non-defendants) poisoned his food daily with "deadly toxins." ECF No. 8-1 at 5.

that were neglectful or obstructive; he just states that he met with them on November 15, 2024, about a home plan and he was told he would be released the next day. *Id.*

Accepting Plaintiff's allegations as true, these defendants provided Plaintiff with an incorrect release date. As the exhibits filed by Plaintiff indicate, he is not scheduled to be released from MDOC custody until August 6, 2025. ECF No. 8-1 at 7. Plaintiff alleges no facts indicating that the incorrect release date was anything more than a mistake on the defendants' part. These allegations of negligent conduct are not enough to state a claim under § 1983. *See Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054-55 (8th Cir. 2020) (discussing how negligent conduct is not enough to establish a violation of an underlying constitutional right in a § 1983 claim).

Furthermore, as verified by Plaintiff's Face Sheet, he is not being held "hostage" past his release date, as his release date is still in the future. Plaintiff does not have a constitutional right to be conditionally released before the expiration of his sentence. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Dace v. Mickelson,* 816 F.2d 1277, 1280-81 (8th Cir. 1987). There are no facts presented that support Plaintiff's claim that he is being unlawfully detained.[7] Plaintiff's claims

---

However, on the next page of that supplement, Plaintiff states that his "psych status" is being fraudulently classified by three mental health providers at ERDCC, who are not named defendants. Id. at 6. Given that none of the named defendants in this matter are mental health providers, there is no reason to believe any of them are personally responsible for Plaintiff's mental health classification. Furthermore, as discussed above, Plaintiff's food poisoning allegations are subject to dismissal as frivolous because "the facts alleged rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. As such, to the extent that Plaintiff is attempting to bring claims regarding his mental health classification and for food poisoning against any of the named defendants, these claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

[7] To the extent that Plaintiff's 'unlawful detention' claim pertains to his placement in administrative segregation, this claim also fails. *See* ECF No. 7-1 at 8-10 (exhibits concerning placement in administrative segregation). A procedural due process claim "is cognizable only if there is a recognized liberty or property interest at stake." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012). Furthermore, the Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). However, placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin)*.

regarding his unlawful detention fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

## V.    Claims Regarding Response (or Lack of Response) to Plaintiff's Complaints

Plaintiff asserts that defendant Richard Adams, the ERDCC Warden, and Tim Freeman, an ERDCC superintendent, violated his due process by "refusing to address [his] unlawful detention." ECF No. 8 at 4. Later, Plaintiff also alleges that Adams "will not reply, nor help" him. *Id.* at 7. Similarly, Plaintiff states that defendants Mike Boyd and Tim Freeman "dismissed his grievance." *Id.* at 6. Plaintiff's IRR denial appears to have been signed by these two defendants. ECF No. 8-1 at 3. Finally, Plaintiff alleges that defendant Justin Miller was "refusing and denying" his grievance appeal to be "vindictive" and retaliate against him. *Id.* at 7.

To the extent that Plaintiff is attempting to allege a federal due process claim arising from the failure to properly process an administrative grievance, the guarantee of procedural due process under the Fourteenth Amendment applies only when a constitutionally protected liberty or property interest is at stake. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). However, prisoners have no federally-protected right to a particular grievance system, or to have prison officials entertain their grievances. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). A prison grievance system "is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Id.* (internal quotation omitted); *see also Flick v. Alba,* 932 F.2d 728 (8th Cir. 1991). As such, Plaintiff fails to establish the violation of a federally-protected right and therefore fails to state a viable § 1983 claim.

To the extent Plaintiff is arguing that certain defendants, like Warden Adams, failed to respond to his complaints or failed to provide him with relief, these claims also fail. As discussed

above, liability under § 1983 requires that a defendant be directly responsible for a deprivation of rights. *Madewell*, 909 F.2d at 1208. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds v. Dormire,* 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)). Similarly, signing a grievance denial is not enough to establish personal involvement by a defendant, as required for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. … Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Finally, as to Plaintiff's assertion that defendant Miller vindictively denied his grievance appeal as an act of retaliation, this claim is unsupported and conclusory. The Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). To state a plausible cause of action, "[a] pleading that merely pleads . . . naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). In this case, Plaintiff makes the blanket assertion that defendant Miller acted vindictively and in a retaliatory manner, but he provides no facts to support this conclusion. As such, these allegations are all subject to dismissal for failure to state a claim.

**Conclusion**

Plaintiff's request to proceed without prepayment of fees and costs will be granted. However, Plaintiff cannot seek immediate release from confinement as relief in this action brought under 42 U.S.C. § 1983. Furthermore, Plaintiff's Amended Complaint only brings claims against the Missouri-employed defendants in their official capacities. These claims are all barred by the Eleventh Amendment. Finally, even if Plaintiff pursued these claims against the defendants in

their individual capacities, they are all subject to dismissal for frivolity or failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). For all of these reasons, this case will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's second motion for leave to proceed *in forma pauperis* [ECF No. 9] is **GRANTED.** *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $1.00 within **thirty (30) days** of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. *See* 28 U.S.C. § 1915(b)(1).

**IT IS FURTHER ORDERED** that Plaintiff's first motion for leave to proceed *in forma pauperis* [ECF No. 5] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint is legally frivolous and/or fails to state a claim upon which relief can be granted. Plaintiff's claims against defendants Lisa Hooker, Justin Miller, Mike Boyd, John Ervin, Brittni Shinkle, Ashley Downs, Tim Freeman, and Richard Adams are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 15th day of May, 2025.

*[signature: Audrey G. Fleissig]*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE